# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

WAYMAN SPARROW,                  )
                                 )
        Petitioner,              )
                                 )
    v.                           )        2:15-cr-00129-NT-1
                                 )        2:16-cv-00449-NT
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Respondent               )


## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

In this action, Petitioner Wayman Sparrow moves, pursuant to 28 U.S.C. § 2255, to

vacate, set aside or correct his sentence. (Motion, ECF No. 52.) In 2016, following a guilty

plea, Petitioner was convicted of conspiracy to distribute and possess with intent to

distribute controlled substances, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846;

and discharging a firearm during and in relation to a drug trafficking crime, pursuant to 18

U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(iii). (Judgment, ECF No. 49 at 1.) The Court

sentenced Petitioner to a total of 196 months in prison. (Judgment at 2.) Consistent with

the appeal waiver in his plea agreement, Petitioner did not appeal from his conviction or

sentence.

Petitioner asserts four grounds in support of his section 2255 motion. First, he

contends that his counsel "failed to file a timely notice of appeal or any appeal," despite

being asked to do so, and further "failed to file a[n] Anders brief."[1] (Motion at 2.) Second,

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

he challenges the "mathematical conversions weight" used to estimate drug quantities for purposes of sentencing. (*Id.*) Third, Petitioner asserts that counsel should have filed a motion to suppress "false claims and hearsay allegations that unfairly and without corroboration" produced the allegedly excessive drug quantity. (*Id.* at 3.) Fourth, Petitioner argues his plea was not a knowing and intelligent waiver of his trial rights because neither the Court nor counsel explained to Petitioner that he would have the right to confront witnesses, citing *Crawford v. Washington*, 541 U.S. 36 (2004), in order to address the alleged "unfair attribut[ion] of a higher grade of controlled substance" to his drug distribution activity. (*Id.*)

The Government argues that Petitioner's motion should be summarily dismissed because, among other things, Petitioner was sentenced based on the drug quantity finding to which he agreed as part of the plea agreement, and because Petitioner has not demonstrated that he pleaded guilty or suffered prejudice at sentencing because of the alleged shortcomings in counsel's performance. (Response, ECF No. 66.)

Following a review of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 9, 2015, the Government filed a superseding indictment charging Petitioner with two offenses: (1) conspiracy to distribute and possess with intent to distribute mixtures of substances containing heroin, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846; and (2) use and discharge of a firearm during a drug

trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).[2] (ECF No. 31.) On December 22, 2015, Petitioner pleaded guilty to the charges. At the time, Petitioner was party to a plea agreement by which he waived his right to appeal his guilty plea, any other aspect of his conviction, and any sentence of imprisonment that did not exceed 209 months. (Plea Agreement, ECF No. 38.) The Court sentenced Petitioner to a prison term of 196 months (76 months on the distribution charge and 120 months on the firearm charge, to be served consecutively) to be followed by a term of supervised release. (Judgment at 2.) Petitioner did not file an appeal, but timely filed the instant § 2255 motion.

A.     The Plea Agreement

Through the plea agreement, Petitioner agreed to enter a plea of guilty to both counts of the superseding indictment, and to be sentenced on the charges. (Plea Agreement at 1, ¶¶ 1 – 2.) The parties agreed they would make certain "binding recommendations" to the Court. (*Id.* at 2, ¶ 3.) In particular, the parties agreed to recommend jointly that the drug quantity attributable to Petitioner's relevant conduct would be the quantity that corresponded with a Guidelines base offense level (BOL) of 32; that the Government would recommend a sentence of 209 months; and that Petitioner would recommend a sentence of 185 months. (*Id.*) The parties further agreed that the Government would be relieved of its obligations under the plea agreement if the Court arrived at a sentence of less than 185 months, and Petitioner would be permitted to withdraw his guilty plea if the Court imposed a sentence of more than 209 months.

---

[2] The original indictment did not include the firearm charge.

Paragraph 4 of the plea agreement read:

4. Appeal Waivers. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, Defendant waives the right to appeal the following:

A. Defendant's guilty plea and any other aspect of Defendant's conviction in the above-captioned case; and

B. A sentence of imprisonment that does not exceed 209 months.

The Defendant's waiver of his right to appeal shall not apply to appeals based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

(Plea Agreement at 4, ¶ 4.)

Under the terms of the agreement, the Court could not impose a sentence that exceeded 209 months without allowing Petitioner to withdraw his guilty plea. (Rule 11 Transcript at 19.) When asked if he was confident that Petitioner understood the appeal waiver provision, defense counsel responded affirmatively. (*Id.* at 20). When the Court reiterated that Petitioner's "rights of appeal are somewhat limited because of the appeal waiver," Petitioner acknowledged he understood. (*Id.* at 22.)

## B. The Rule 11 Hearing

On December 22, 2015, Petitioner appeared with counsel to enter his plea to the superseding indictment. (Rule 11 Transcript, ECF No. 56 at 2 – 3.) Petitioner told the Court he understood the proceedings and the Court found him competent to enter a plea. (*Id.* at 4.) He further informed the Court that he reviewed the superseding indictment and discussed it with counsel. Counsel informed the Court that he approved the plea and

recommended the Court accept it.  (*Id.* at 4 – 6.)  Petitioner then pled guilty to both counts. (*Id.* at 6.)

In the ensuing colloquy, Petitioner informed the Court that he pled guilty because he was actually guilty, and that his counsel explained to him the elements and the nature of the crimes and charges, and the applicable penalties.  (*Id.* at 7 – 8.)  The Court then described the charges and the maximum possible penalties, which information Petitioner stated he understood.  (*Id.* at 8 – 10.)  The Court explained to Petitioner the trial rights he would forego by entering a plea of guilty, including his right, through counsel, to cross-examine the Government's witnesses.  (*Id.* at 10 – 11.)

The Court then informed Petitioner that before the Court would accept his plea, the Court must find that there was a factual basis for the plea of guilty.  Upon the Court's inquiry, Petitioner acknowledged that he was familiar with the facts set forth in the Government's version of the offense (ECF No. 35), that his counsel read to and discussed with him the content of the document, and that he did not disagree with anything in the document.[3]  (*Id.* at 12 – 14.)  Based on this representation, and the content of the

---

[3] The Government's version did not include factual assertions concerning drug quantities, though it did identify the types of drugs distributed and the periods of time in which Petitioner engaged in trafficking activity.  In summary, the Government's version set forth the following description of Petitioner's criminal activity:  Beginning in approximately October 2011, a group of individuals from New York led by a person known as "Prince" began coming to Portland, Maine to distribute drugs, including heroin, cocaine base, and cocaine.  Petitioner was a member of the New York group, and personally located apartments in Portland, brought drugs to Maine, distributed them directly or through runners, and took drug proceeds back to New York.  In late 2012 or early 2013, following a dispute with "Prince," Petitioner stopped working for the "Prince" organization and began dealing drugs independently with other people.  Petitioner distributed heroin to the tenant of an apartment at the Lafayette Arms in Portland in exchange for being allowed to use the apartment to distribute drugs.  On March 12, 2013, "Prince" discovered that Petitioner was in the Lafayette Arms apartment, confronted Petitioner in the hallway, and the two exchanged gunfire. By the time the police responded, Petitioner had fled, but the police gathered the bullets and bullet casings from the incident.  Forensic testing showed that the bullets and casings came from two different firearms,

Government's version, the Court found a factual basis on which to accept Petitioner's pleas to the charges. (*Id.* at 14.)

The Court next addressed the parties' plea agreement. In particular, the Court discussed with Petitioner the fact that the agreement contained a waiver of the right to appeal from any sentence of incarceration that did not exceed 209 months. (*Id.* at 16 – 17.) The Court inquired, and Petitioner confirmed, that he understood the terms of the agreement, agreed to the terms, including the appeal waiver, and signed the plea agreement voluntarily. (*Id.* at 18 – 19.) Petitioner testified that no other promise (other than those contained in the plea agreement) influenced his decision to enter the guilty pleas. (*Id.* at 23.) The Court accepted Petitioner's pleas based on his statements in open court, and counsel's recommendation that the Court accept the plea. (*Id.*)

### C. Report of Presentence Investigation (PSR)

In the revised PSR dated April 26, 2016, the probation officer reported that Petitioner was a manager for a drug trafficking organization that distributed large quantities of cocaine, crack cocaine, and heroin in Portland between 2011 and 2013, and that Petitioner subsequently engaged in independent trafficking activity. (PSR at 4 – 5.) Based on the drug quantities revealed during its investigation and certain assumptions as to the

---

one of them a Smith & Wesson .40 caliber handgun. In June 2013, officers discovered on Petitioner's person a Smith & Wesson .40 caliber handgun. Forensic testing showed that some of the bullets and casings recovered at the Lafayette Arms on March 12 were fired from the firearm.

gross revenue generated by Petitioner and others,[4] and given a base offense level of 34, the probation officer calculated the aggregate guideline range of 255 to 288 months.

### D. Sentencing Hearing

At sentencing on June 7, 2016, defense counsel confirmed that Petitioner had received the revised PSR and reviewed and discussed it with counsel. (Sentencing Transcript, ECF No. 57 at 4 – 5.) When asked if he disagreed with any of the report's contents, Petitioner stated that the assumption that he made $600,000 per year was not true. (*Id.* at 5.) The Court asked whether a base offense level of 32 would address Petitioner's objection. Counsel stated it would. (*Id.*) In response to the Court's subsequent questioning, Petitioner informed the Court that he had no other objections to the report. (*Id.* at 6.) The Court accepted the parties' recommendation as to drug quantity. (*Id.* at 7.)

After argument and Petitioner's allocution, the Court accepted the plea agreement. (*Id.* at 32.) The Court sentenced Sparrow to 76 months on Count One to be followed by a consecutive term of 120 months on Count Two. (*Id.* at 38.) As to Petitioner's right to appeal, the Court explained that the appeal waiver in the plea agreement was "generally enforceable," but advised Petitioner that he had 14 days to file a notice of appeal with the Court and that, if he requested, the Clerk would file an appeal on his behalf. (*Id.* at 39 –

---

[4] For instance, according to the PSR, several informants reported observing Petitioner and the conspiracy with significant amounts of drugs and money, including 80 grams of prepackaged heroin in a book bag and 90 grams of heroin transported to Maine by bus. (PSR at 5.) One informant reported that the conspiracy sold heroin at the rate of $100 per gram, and that in a 10-day period, the conspiracy generated $100,000. (*Id.*) Upon arresting Petitioner, officers found $700 in currency, which amount would convert to 7 grams of cocaine base using a rate of $100 per gram of crack cocaine. (*Id.* at 6.) Searches of two hotel rooms Petitioner rented produced $4,600 in cash and 67 grams of heroin. (*Id.*)

40.)  The Court entered judgment on June 7, 2016.  (ECF No. 49.)  Petitioner did not file an appeal.

## II.    DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

A section 2255 petitioner must establish by a preponderance of the evidence that he or she is entitled to section 2255 relief.  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002).  "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can

demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court set forth the federal constitutional standard by which claims of ineffective assistance of counsel are evaluated; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one...." *Id.* at 697.

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)). In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens v. United States*, 483 F.3d 48, 57 (1st Cir. 2007) (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)). Summary dismissal of a motion is permitted when the allegations are "'vague,

conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The Court can reasonably require a petitioner to supply the Court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

## B. Claims and Analysis

In his motion, Petitioner sets forth four grounds for relief from his sentence: (1) counsel failed to honor Petitioner's request for an appeal; (2) drug quantity calculations in the PSR were excessive; (3) counsel did not file a motion to suppress evidence regarding drug quantity; and (4) neither counsel nor the Court explained to Petitioner his right to confront witnesses regarding their drug quantity testimony.[5]

### 1. Counsel's failure to appeal or file *Anders* brief

Petitioner asserts his counsel should have filed either an appeal or an *Anders* brief because Petitioner asked him to appeal from the sentence. When a defendant directs counsel to file an appeal, counsel is obligated to file an appeal, or move to withdraw and file an *Anders* brief.[6] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Counsel also has

---

[5] Petitioner has not sworn to the allegations set forth in his motion as required. For purposes of this Recommended Decision, I have assumed that if permitted leave, Petitioner could correct that deficiency in the pleading. I thus will discuss the merits of Petitioner's arguments.

[6] While counsel is not required to file a frivolous appeal, if a defendant directs counsel to file an appeal that counsel believes is "wholly frivolous," counsel must move to withdraw and include in the motion "a brief referring to anything in the record that might arguably support the appeal." *Anders v. California*, 386 U.S. 738, 744 (1967).

"a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

In this case, a review of the record reveals that counsel consulted with Petitioner regarding an appeal. By letter to Petitioner dated June 9, 2016, counsel stated in pertinent part: "As we discussed, there will be no appeal. There is nothing to appeal in any event because you entered a plea of guilty." (Letter, ECF No. 67.) Counsel's letter, which is uncontroverted on the record, establishes that counsel communicated with Petitioner regarding an appeal on at least two occasions (i.e., the letter and the discussion referenced in the letter) and, therefore, counsel satisfied the obligation to consult with Petitioner.

Despite the substance of the letter, Petitioner asserts in this action that he asked Petitioner to file an appeal. The record lacks any credible support for Petitioner's allegation. First, Petitioner signed a plea agreement in which he agreed to waive his right to appeal from the sentence if the Court sentenced him to less than 209 months. Because the Court sentenced Petitioner to 196 months, pursuant to the plain terms of the written plea agreement, Petitioner waived his right to appeal. In addition, Petitioner orally acknowledged his waiver during the plea hearing. Finally, the record contains no evidence to suggest that Petitioner in any way challenged the representations in counsel's June 9, 2016, letter, that there would be "no appeal" and that "there is nothing to appeal." The lack of a challenge is inconsistent with Petitioner's wholly unsupported assertion that he asked counsel to file an appeal.

In somewhat similar circumstances, in *Zanuccoli v. United States*, 459 F. Supp. 2d 109 (D. Mass. 2006), reasoning that a section 2255 petitioner "had no reason to appeal his sentence, because he received *exactly* the sentence agreed upon in his plea bargain" and noting that the petitioner "expressly waived his right to appeal," the court found the claim to be "highly implausible." *Id.* at 111-112 (emphasis in original).[7] *See also United States v. Rivera*, No. 1:10-cr-10433, 2015 WL 6697267, at *1, 2015 U.S. Dist. LEXIS 148912, at *3 (D. Mass. Nov. 3, 2015) (argument that counsel ignored request "strain[ed] credulity"); *Gonzalez v. United States*, No. 1:08-cr-10223, 2012 WL 5471799, at *5, 2012 U.S. Dist. LEXIS 160230, at *12 – 15 (D. Mass. Nov. 8, 2012) (hearing denied despite conflicting record evidence, noting that petitioner's contention that counsel ignored a request to file an appeal was unreliable in the absence of corroboration, particularly where the sentence received was consistent with plea agreement (citing *United States v. Butt*, 731 F.2d 75, 80 n.5 (1st Cir. 1984) (holding that assertions of attorney misrepresentation require specific allegations and usually some independent corroboration to obtain an evidentiary hearing)). Petitioner's claim is likewise "highly implausible." To permit Petitioner to proceed on a "highly implausible" claim based simply on a bald assertion that he instructed counsel to file an appeal would be inconsistent with the principle that "[p]ostconviction relief on collateral review is an extraordinary remedy, available on a sufficient showing of fundamental unfairness." *Singleton v. United States*, 26 F.3d 233, 236 (1st Cir. 1994).

---

[7] The court in *Zanuccoli* also observed that petitioner's counsel contradicted the claim through an affidavit in which counsel asserted that he had no recollection of petitioner directing that he file an appeal and that his ordinary practice would be to file an appeal if requested. *Id.* In this case, the June 9, 2016, letter, written within two days of sentencing and unchallenged on the record, is arguably just as reliable, if not more reliable, than the affidavit filed in *Zanuccoli*.

### 2. Drug quantity estimate

In his second ground, Petitioner asserts that "the mathematical conversions weight is factually incorrect in as much as I did not possess the amount of CDS nor the type of CDS attributed to me therefore my sentence was illegally enhanced due to false crack cocaine attributed to me." (Motion at 2.) The Court adopted the base offense of level 32 recommended by Petitioner and the Government, and thus did not make a specific drug quantity determination.

To be subject to collateral attack under section 2255(a), the sentence must be the product of a "fundamental defect" that would cause "a complete miscarriage of justice" if uncorrected, or a procedural irregularity "inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). The parties' drug quantity recommendation does not represent a fundamental defect in the proceedings, nor was its presentation inconsistent with fair procedure. Petitioner's challenge appears directed to the drug quantity calculation set forth in the PSR. Significantly, the Court did not adopt the PSR drug quantity calculation. Rather, the Court based the sentence on the drug quantity finding in the parties' plea agreement.

Furthermore, under the applicable Guidelines, Petitioner's assertions do not suggest a realistic basis for a drug quantity finding below a base offense level 32. In the PSR, the probation officer converted certain seized currency to drug quantities of cocaine base rather than heroin. (PSR at 6, ¶ 8 ($5,300 converted to 53 grams of cocaine base).) The estimate of the quantity of drugs distributed by Petitioner and his associates between 2011 and "a couple of months prior" to March 2013 was more significant. For this 48-week period, the

probation officer estimated total revenue of $900,000, with 75% of the revenue from heroin (6,750 grams) and 25% from cocaine base (2,250 grams). (PSR at 7, ¶ 8A.)

Because more than one drug was at issue, the probation officer calculated a total marihuana equivalent. Pursuant to the United States Sentencing Commission Guidelines Manual (U.S.S.G.) Drug Equivalency Tables, one gram of heroin is treated as 1000 grams of marihuana for sentencing purposes, while one gram of cocaine base is treated as 3,571 grams of marihuana. U.S.S.G. § 2D1.1 application note 8(D) (2015). The probation officer then calculated a total of over 15,000,000 grams (15,000 kilograms) of marihuana equivalent, which corresponds with a Base Offense Level of 34, which is higher than the level recommended by the parties and accepted by the Court. U.S.S.G. § 2D1.1.

Petitioner disputes the accuracy of the crack cocaine quantity attributed to his distribution activity, but he does not dispute the finding that he distributed crack cocaine. Even if Petitioner prevailed on his argument, the base offense level would not be less than 32, which was the level adopted by the Court. Level 32 applies when the marihuana quantity is at least 3,000 kg but less than 10,000 kg. It would also apply if the distribution activity was limited to 840 grams of cocaine base, or 3 kg of heroin. *Id.* The base offense level thus would have been 32 even if the total marihuana equivalent was as low as 3,000 KG, or one-fifth (1/5) of the probation officer's total estimate of marihuana equivalent. Indeed, Petitioner's base offense level would have been 32 even if all of the crack cocaine

estimate and half of the heroin estimate were disregarded.[8]  Petitioner, therefore, cannot prevail on his contention that the quantity of crack cocaine attributed to him was excessive.

Finally, Petitioner's argument is belied by his concession at sentencing that a base offense level of 32 was appropriate.  In sum, Petitioner has not and cannot establish that his sentence is "otherwise subject to collateral attack" pursuant to 28 U.S.C. § 2255(a) based on a challenge to the base offense level.

### 3.  Motion to suppress

Petitioner also seeks relief based on counsel's failure "to file a suppression hearing in regards to the false claims and hearsay allegations that unfairly and without corroboration attached to me significant amounts of CDS wrongfully."  (Motion at 3.) Petitioner has offered no specific factual evidence to suggest a legitimate basis upon which he could successfully exclude the evidence of drug quantity as presented in the PSR.  At any sentencing hearing, the Rules of Evidence would not apply, and the Court could credit any drug quantity evidence that has "sufficient indicia of reliability to support its probable accuracy," *United States v. Torres-Landrua*, 783 F.3d 58, 64 (1st Cir. 2015) (quoting *United States v. Zuleta–Álvarez,* 922 F.2d 33, 36 (1st Cir. 1990)), including reliable hearsay evidence.  *United States v. Ramirez-Negron*, 751 F.3d 42, 52 (1st Cir. 2014); *United States v. Montoya*, 967 F.2d 1, 3 (1st Cir. 1992).  A motion to suppress, therefore, would have not have had a material effect on the information considered by the Court at sentencing.

---

[8]  Distribution of 3,000 grams of heroin is enough to earn a base offense level of 32.  Distribution of 850 grams of crack cocaine would also suffice.

Furthermore, given that Petitioner agreed to the terms of the plea agreement, and agreed that a base offense level of 32 was appropriate, the record would not support a finding that counsel's performance was in any way substandard.

### 4. *Crawford v. Washington*

Petitioner further contends that the "unfair attributing of a higher grade of controlled substance" occurred because neither counsel nor the Court explained his confrontation right under *Crawford v. Washington* before he entered his guilty plea. (Motion at 3.) The right of confrontation articulated in *Crawford* does not extend beyond the context of trial. *United States v. Mitchell-Hunter*, 663 F.3d 45, 52 (1st Cir. 2011). The right thus does not apply at sentencing hearings. *United States v. Luciano*, 414 F.3d 174, 178 – 79 (1st Cir. 2005); *United States v. Rodriguez,* 336 F.3d 67, 71 (1st Cir. 2003).

Even if *Crawford* had any applicability to Petitioner's plea and sentencing, the record unequivocally establishes that Petitioner's factual contention is without merit. At the plea hearing, the Court specifically advised Petitioner that by pleading guilty he would waive his right to "cross-examine any of the Government's witnesses and object to any of the evidence that the Government offered." (Rule 11 Transcript at 11.) Petitioner acknowledged he understood. (*Id.*) The Court then informed Petitioner: "If I accept your guilty plea, you'll have given up your right to a trial and the rights associated with the right to a trial that I've just described to you, and there will be no trial of any kind on this superseding indictment. Do you understand that?" Petitioner responded, "Yes, Your Honor." (*Id.*) Because Petitioner's claim fails on the merits, Petitioner's related claim of

ineffective assistance of counsel also fails. *See Tse v. United States,* 290 F.3d 462, 465 (1st Cir. 2002).

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Case, and I recommend the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of May, 2017.